IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| **CHARLES H. ROSS,**<br>Plaintiff,<br>v.<br>**MICHAEL J. ASTRUE,**<br>Commissioner of Social Security,<br>Defendant. | No. 11-CV-4105-DEO<br><br>RULING AND ORDER |

## I. INTRODUCTION AND BACKGROUND

This matter is before the Court pursuant to Charles H. Ross' (hereinafter Mr. Ross) Complaint, requesting disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.* This Court has authority to review the final decision of the Commissioner of Social Security (Commissioner) pursuant to 42 U.S.C. § 405(g). The parties appeared by phone for hearing on October 11, 2012. After hearing the parties' arguments, the Court took the matter under advisement and now enters the following.

## II. FACTUAL BACKGROUND

Mr. Ross claims disability arising out of a number of different, undisputed, medical conditions. At the time of hearing, Mr. Ross was 49 years old. He lives with his

1

girlfriend in Milford, Iowa.  Over the course of his life, Mr. Ross has had a number of manual labor type jobs, most recently running a gutter installation business.  At the time of hearing, Mr. Ross was 6'3" and weighed approximately 330 pounds.  He has a tenth grade education.

Mr. Ross meets the insured status requirements and filed for disability on October 5, 2009, claiming an initial onset date of July 28, 2009, shortly after a heart attack.  In a letter dated October 29, 2009, Dr. Brett Olson, Mr. Ross' primary care provider at the time, outlined Mr. Ross' various medical issues including:  diabetes, neuropathy, joint problems, sleep apnea, coronary artery disease, mood swings, sleepiness, headaches, obesity and COPD.  Docket #7, p. 296-297.  Dr. Olson opined that it would be difficult for Mr. Ross to continue working as he had prior to his heart attack and stated that:

> in regards to his lifting and carrying, that is limited due to his obesity, COPD[1] and his cardiac condition.  He is really more of a sedentary type guy and he wouldn't be able to do any repetitious factory type work, certainly no climbing up ladders, kneeling, stooping.  He could do some standing and walking but he would be limited because he is so heavy and he has

---

[1] COPD is a common lung disease often referred to as chronic bronchitis.

2

>   arthralgias and myalgias that he certainly
>   wouldn't be able to do that on an eight
>   hour basis.

*Id.*

Mr. Ross is currently treated by a nurse practitioner in Milford, Iowa, Jamie Hicks.[2] According to Hicks,

>   In the time that I have known him, Charles
>   has been unemployed ... I would agree that
>   his functional capacity has diminished
>   significantly, to making him only qualified
>   for sedentary work. Unfortunately, as his
>   daytime somnolence is quite significant he
>   falls asleep very easily during office
>   appointment visits during an interview he
>   will be somewhat mentally foggy and fall
>   asleep without much waning ... I do feel
>   that Charles is an excellent candidate for
>   Disability as he is quite high risk for
>   further complications from his health
>   problems including his coronary artery

---

[2] "Nurse practitioners are registered nurses who pursue additional, more comprehensive education and clinical training...Nearly all currently practicing nurse practitioners have master's degrees, and many have earned doctorates... A nurse practitioner typically has authority to provide the following services: obtain medical histories and perform physical examinations; diagnose and treat health problems; order and interpret laboratory tests and x-rays; prescribe medications and other treatments...Nurse practitioners practice in a variety of settings, ranging from primary care practice offices to hospitals to long-term care to specialty practices, and also non-traditional models of care such as nurse-managed health centers and convenient care clinics." Tine Hansen-Turton & Jamie Ware, Frank McClellan, *Nurse Practitioners in Primary Care*, 82 Temp. L. Rev. 1235, 1243-44 (2010).

3

> disease, hyperlipidemia,[3] obesity, sleep
> apnea, and subsequent inability to perform
> routine musculoskeletal tasks. I do feel
> that mentally he has some issues ...
> although he is not any formal diagnosis ...
> his daytime somnolence makes it excessively
> hard for him to complete and follow
> directions and tasks.

Docket #7, p. 370.

**III. PROCEDURAL HISTORY**

Mr. Ross' claim was initially denied on January 5, 2010. Mr. Ross filed an application for reconsideration which was denied on March 30, 2010. Mr. Ross filed a request for hearing on May 25. 2010. Hearing was held on May 9, 2011, before Administrative Law Judge Theodore P. Kennedy.

On June 14, 2011, the ALJ denied benefits. The ALJ outlined the applicable standards, stating that:

> At step one, the undersigned must determine
> whether the claimant is engaging in
> substantial gainful activity. ... At step
> two the undersigned must determine whether
> the claimant has a medically determinable
> impairment that is "severe" or a
> combination of impairments that is
> "severe." ... At step three, the
> undersigned must determine whether the
> claimant's impairments or combination of
> impairments meets or medically equals the
> criteria of an impairment ... If the
> claimants' impairment or combination of
> impairments meets or medically equals the

---

[3]Commonly known as high cholesterol.

> criteria of a listing and meets the duration requirement, the claimant is disabled. If it does not, the analysis proceeds to the next step ... Next the undersigned must determine ... whether the claimant has the residual functional capacity to perform the requirements of his past relevant work. At the last step ... the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled.

Docket #7, p. 8-10.

The ALJ determined that Mr. Ross has not engaged in substantial gainful activity since October 5, 2009, and that he has several severe impairments, including: obesity, arthritis, diabetes mellitus with neuropathy, coronary artery disease, obstructive sleep apnea, pulmonary disease and adjustment disorder. *Id*. However, the ALJ found that those impairments did not rise to the level of a disability. Specifically, the AlJ found that:

> Although the claimant has impairments which are considered to be "severe," they are not attended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements ... The claimant's mental impairment does not meet or medically equal the criteria ... [T]o satisfy the ... criteria, the mental impairment must result in a least two of the following: marked restriction of activities of daily living;

5

> marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, penitence, or pace; or repeated episodes of compensation, each of extended duration.... Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the ... criteria are not satisfied. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work.... In sum, the above residual functional capacity assessment is supported by the claimant's testimony, the objective medical evidence, his lack of treatment, lack of medications, poor work history, daily activities, DDS opinions, and the record as a whole.

*Id.*, at 12-13, 18.

In making his determination, the ALJ did not dispute that Mr. Ross' illness could lead to the various symptoms he describes. However, the ALJ did not find Mr. Ross' testimony credible, stating that, "the undersigned finds that the claimant's medically determinable impairments could reasonable be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Docket #7, p. 14. The ALJ

cited what he described as "significant history of noncompliance." *Id*. The ALJ also took issue with a report written by Mr. Ross' nurse practitioner, Jamie Hicks. Hicks wrote that she believed Mr. Ross to be disabled. But the ALJ found that:

> a registered nurse is not an acceptable medical source whose opinion can be given controlling weight, and Ms. Hicks' opinions are not entitled to significant weight when considered in the light of the record as a whole. While Ms. Hicks has stated that the claimant was disabled, it is not clear that she was familiar with the definition f "disability" contained in the Social Security Act and regulations. Specifically, it is possible that she was referring to the statutes in the state of Iowa or the claimant's inability to perform his past work, which is consistent with the conclusions reached in this decision.

Docket #7, p. 17. The ALJ went on to say that he considered the opinions of Mr. Ross' primary care physician, Dr. Olson; psychologist, Don Johnson; and Dr. Dennis Weis in coming to his decision to deny Social Security benefits. *Id*. Finally, the ALJ opined that there were a number of jobs that Mr. Ross could continue to perform.

Mr. Ross appealed the ALJ's decision. The Appeals Council denied Mr. Ross' claim on September 30, 2011. Mr. Ross then filed the present action.

## IV. STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *Finch v. Astrue*, 547 F. 3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008) (citing *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (citing *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence supports the ALJ's decision. *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004). The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citing *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994)). This Court may also ascertain whether the ALJ's decision is based in legal

error. *Lauer v. Apfel*, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. *Neal v. Barnhart*, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. § 405(g).

**V. ISSUES**

Mr. Ross argues that a preponderance of the medical evidence in this record compels a finding that Mr. Ross is disabled and entitled to receive benefits, and the record does not contain substantial evidence on the record as a whole to support the decision of the Administrative Law Judge.

**VI. ANALYSIS**

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act]. The Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A). Mr. Ross argues that the ALJ was incorrect when he determined that Mr. Ross was not disabled.

9

Specifically, Mr. Ross argues that the ALJ decision was not supported by substantial evidence, and in fact, the Court should determine substantial evidence supports a determination that Mr. Ross is disabled as defined in 42 U.S.C. § 423(d)(1)(A).

### A. Mr. Ross' Credibility

At the outset, the Court notes that the ALJ dismissed Mr. Ross' testimony about the severity of his condition on credibility grounds. Docket #7, p. 14. As discussed above, this Court cannot disturb the ALJ's findings unless those findings are not supported by substantial evidence. *Baker v. Barnhart*, 457 F.3d 882, 893 (8th Cir. 2006). At the hearing, Mr. Ross argued that the ALJ came to this erroneous determination because Mr. Ross had failed to seek medical treatment, and the ALJ found Mr. Ross' failure to seek constant medical treatment was evidence of his lack of disability. There is no doubt that the ALJ faulted Mr. Ross for failing to secure constant medical treatment. It is also clear that the ALJ relied on the residual functional capacity assessment in determining that Mr. Ross was not a credible witness. Docket #7, p. 14.

10

However, the substantial weight of the entire record in this case lends credence to Mr. Ross' testimony. The ALJ admitted that certain testimony, including testimony he specifically found credible, indicated that Mr. Ross has a hard time functioning on a day to day basis. See Docket #7, p. 17, where the ALJ states that, "[Mr. Ross' sister] reported that the claimant has some problems getting along with others, needs reminders to take care of his personal needs, and requires help to finish his chores." As will be discussed further below, the medical opinions reflected in the record also support Mr. Ross' contention that he has a hard time functioning and could not function in the work force. Accordingly, the ALJ's determination that Mr. Ross' testimony was not credible is not supported by substantial evidence. Mr. Ross' testimony should be given the weight it deserves.

**B. Medical Authority**

In arguing that he is disabled, Mr. Ross points to the letters written by his two primary care providers, Dr. Olson and Nurse Hicks. (Quoted extensively above). The Defendant counters that, "[c]ontrary to plaintiff's assertions, the ALJ properly considered all the medical assessments and opinions

11

when finding plaintiff's RFC, and the ALJ's findings are supported by substantial evidence." Docket #12, p. 13-14.

The ALJ applied the appropriate multi-step methodology and found that Mr. Ross has some severe impairments. See 20 C.F.R. §§ 404.1520, 416.920. Neither party disputes that fact. Indeed, the parties agree that Mr. Ross suffers from a number of severe medical issues, including: diabetes, COPD, and coronary artery disease. However, the ALJ determined that those impairments do not rise to the level of a disability pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ also considered Mr. Ross' residual capacity, age, education and work experience and determined that there were jobs that Mr. Ross could continue to do.

The Court agrees with Mr. Ross that the ALJ failed to give adequate credit to the opinions of Mr. Ross' primary providers. "The medical opinions of 'treating sources' on the nature and severity of a claimant's impairments are given more weight than non-treating sources and are even given controlling weight if certain conditions are met." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (internal citations omitted). Dr. Olson was Mr. Ross' first primary care provider. As discussed above, Dr. Olson opined that:

> [Mr. Ross] is really more of a sedentary type guy and he wouldn't be able to do any repetitious factory type work, certainly no climbing up ladders, kneeling, stooping. He could do some standing and walking but he would be limited because he is so heavy and he has arthralgias and myalgias that he certainly wouldn't be able to do that on an eight hour basis.

The mere fact that a plaintiff can stand and walk is not determinative of the question of whether they are disabled. Other than the admission that Mr. Ross can stand and walk, Dr. Olson's opinion clearly suggests that Mr. Ross is severely impaired. He specifically states that Mr. Ross would not be able to maintain an eight hour a day job. The state argues that because Dr. Olson 'lost track' of Mr. Ross for a short period of time, his opinion should be discounted. The Court disagrees. It is clear both from his records and his letter that Dr. Olson had substantial knowledge of Mr. Ross' condition and outlook. Accordingly, it was an error for the ALJ to discount Dr. Olson's opinion as a treating medical source.

It also seems clear that the ALJ failed to give adequate consideration to the opinion of Ms. Hicks. As the Defendant points out in its brief, nurse practitioners are not considered treating sources. *Lacroix*, 465 F.3d at 886.

However, even if a nurse practitioner is not a treating source, under Section 423 of the Social Security Act, the ALJ is required to consider all of the evidence available in a claimant's case record, including evidence from medical sources. 42 U.S.C. § 423(d)(5)(B); see also 20 C.F.R. § 404.1527(d). The State argues that "[i]n this case, the ALJ properly considered Ms. Hicks's assessment in light of the full record evidence, which showed plaintiff had a less severe condition than Ms. Hicks outlined." Docket #12, p. 18. However, that argument is incorrect. Ms. Hick's testimony is substantially similar to the opinion of Dr. Olson, Mr. Ross' treating physician. It is also supported by Mr. Ross' own testimony. It seems clear that substantial evidence supported her opinions and the ALJ's failure to give them adequate credit was an error.

Ms. Hicks specifically states that Mr. Ross has a significantly diminished functional capacity. She states that he may be able to qualify for some sedimentary type work, but qualifies that by saying that he can barely stay awake during the day and he has extreme difficulty understanding and following instructions. Docket #7, p. 370. The fact that Mr. Ross has problems with cognition and daily functioning is

14

supported by opinion of Dawn Howley, another nurse practitioner who performed a psychiatric evaluation of Mr. Ross. Docket 12, p. 10. Ms. Howley stated that, "I would say that [Mr. Ross] has chronic mood problems related to his disability and inability to be employed...I would also add that theoretically, his untreated obstructive sleep apnea could result in chronic deprivation of oxygen to the brain causing memory difficulties, overall problem with cognition, thought organization, and attention." Docket #7, p. 394. Again, Ms. Howley cannot be considered a treating source. However, her opinion is credible and supported by the record as a whole, including the testimony of Mr. Ross, his sister, and Ms. Hicks. Consequently, it should be given the weight it deserves.

The treating opinion of Dr. Olson, when considered with the testimony of Mr. Ross, Mr. Ross' sister and the opinions of Ms. Hicks and Ms. Howley, clearly indicate that Mr. Ross has numerous impairments that combined rise to the level of a disability. Mr. Ross' physical ailments preclude him from doing the factory/manual labor to which he is accustomed. The impact of those ailments also inhibit Mr. Ross' ability to do other, sedentary type jobs. This determination is supported

by substantial evidence. Accordingly, the ALJ erred in finding otherwise.

Finally, the Court notes that that both the Defendant and the ALJ discuss the fact that some of Mr. Ross' providers suggest his illnesses could be better treated if he spent more money on medicine, and less on cigarettes. The Court fails to see what relevance this repeated point has. There is nothing in the record that suggests a lone course of treatment could 'cure' Mr. Ross' various ailments. He finds himself on the precipice of disability not because of a single, easily cured, illness but because of a combination of severe medical problems. The Defendant and the ALJ seem to suggest that the fact Mr. Ross is in a deteriorating state is evidence that he is not as impaired as he claims. This Court disagrees. Substantial evidence in the record supports a conclusion that he is in such poor condition, and takes such poor care of himself, not to further his disability, but because of it.

### VII.    CONCLUSION

The question becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits. The Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for

rehearing," but the Eighth Circuit has held that a remand for award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability. 42 U.S.C. 405(g); *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000). In this case, the Court is persuaded that a remand to take further evidence or to correct the ALJ's errors would only result in an unnecessary delay in Mr. Ross' receipt of the benefits to which he is entitled. Mr. Ross has several severe conditions, including diabetes, sleep apnea, pulmonary disease, and COPD that in combination with the other factors discussed above have left him disabled. This case, therefore is reversed and remanded for an award of benefits.[4]

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if Ross' attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

---

[4] Although plaintiff alleged disability beginning in July 2009, SSI benefits may be paid, at the earliest the month following the month the application was filed. See 20 C.F.R. §§ 416.330, 416.335.

**IT IS SO ORDERED** this 7th day of December, 2012.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa